IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TITLEMAX OF ALABAMA, INC., ) <br> ) <br>     Appellant, ) <br> ) <br> v. ) <br> ) <br> KIMBERLY HOPE ARNETT, ) <br> ) <br>     Appellee. ) | CASE NO. 2:21-cv-00840-RAH <br>     [WO] |

*******************************

| | |
|---|---|
| TITLEMAX OF ALABAMA, INC., ) <br> ) <br>     Appellant, ) <br> ) <br> v. ) <br> ) <br> LENTONIUS FARYETT SMITH, ) <br> ) <br>     Appellee. ) | CASE NO. 2:21-cv-00841-RAH <br>     [WO] |

**MEMORANDUM OPINION AND ORDER**

These appeals concern the prepetition actions of the debtors in entering into new pawn agreements with TitleMax of Alabama, Inc., while knowing that they were going to file for Chapter 13 bankruptcy protection hours and days later. Had TitleMax known of the debtors' intent and plans, it would not have entered into new pawn agreements. Once the debtors filed for bankruptcy protection and filed their

1

proposed plans, TitleMax objected, claiming lack of good faith by the debtors. After a hearing, the bankruptcy court concluded that the debtors acted in good faith, overruled TitleMax's objections, and confirmed the proposed plans. These appeals followed.

## JURISDICTION

The bankruptcy court's confirmation of a Chapter 13 plan is a final order. *See Catlin v. United States*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). The district court has jurisdiction to hear appeals from all final orders of the bankruptcy court. 28 U.S.C. § 158(a)(1).

## STANDARD OF REVIEW

In an appeal of a bankruptcy court decision, the district court sits as an appellate court. *Williams v. EMC Mortg. Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). The district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and conclusions of law under the *de novo* standard. *In re Piazza*, 719 F.3d 1253, 1260 (11th Cir. 2013).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

These appeals concern two bankruptcy petitions: one filed by Kimberly Hope Arnett and the other by Lentonius Faryett Smith. Both petitions were filed shortly after Arnett and Smith entered into pawn agreements with TitleMax of Alabama,

Inc. TitleMax objected to the proposed bankruptcy plans, alleging bad faith by Arnett and Smith. The bankruptcy court overruled these objections and TitleMax appealed both rulings, bringing both Arnett's and Smith's cases before this Court.

### A. Arnett

Kimberly Hope Arnett first pawned her 2013 Kia Forte with TitleMax in November 2020 and renewed the pawn every month. TitleMax repossessed the Kia sometime after May 24, 2021, because Arnett failed to timely redeem the Kia based on a pawn agreement executed on March 24, 2021. Arnett then consulted with bankruptcy counsel and devised a plan to obtain the Kia back from TitleMax by executing a new 30-day pawn agreement with TitleMax, paying any fees, and then almost immediately declaring Chapter 13 bankruptcy protection, under which she could modify the terms of her pawn in her bankruptcy.

As planned, Arnett reacquired possession of the Kia on June 14, 2021, when she made a finance charge payment and executed a new 30-day renewal pawn agreement with TitleMax. The new 30-day pawn disclosed an annual percentage rate of 133.71%. Arnett did not disclose that she had consulted with bankruptcy counsel or that she intended to file for bankruptcy protection shortly thereafter. Instead, in her pawn agreement, she represented and agreed in writing that she had no intent to file for bankruptcy protection. This representation was made pursuant to paragraph 22(j) of the pawn agreement, which states, "Pledgor represents, warrants,

3

acknowledges and agrees . . . You are not a debtor in bankruptcy. You do not intend to file a federal bankruptcy petition." (Doc. 4-17 at 6.)

According to TitleMax, had it known that Arnett intended to file for bankruptcy protection, it would not have entered into the renewal pawn agreement with Arnett, nor would it have returned the repossessed Kia to her.

Hours after executing the new pawn agreement, Arnett completed a bankruptcy counseling course at her bankruptcy attorney's office and then filed for Chapter 13 bankruptcy protection the same day.

Arnett proposed a plan that included the TitleMax pawn with a debt amount of $3,500, a payment period of 58 months, interest at 3.25%, adequate protection payments of $5 per month, and a monthly payment of $125. TitleMax objected to the plan alleging bad faith and fraud. The bankruptcy court overruled the objection, found that Arnett filed in good faith, and confirmed the plan.

**B. Smith**

Lentonius Faryett Smith pawned his 2007 Saturn Aura with TitleMax on several occasions. Pursuant to the terms of his May 7, 2021, pawn agreement, payment was due on June 6, 2021, in order to redeem the Saturn. Smith did not redeem, but instead executed a new pawn agreement with TitleMax on June 17, 2021. The new pawn agreement required that he pay the sum of $1,567.02 plus a finance charge of $227.57, which constituted an annualized percentage rate of

206.71%. In that agreement, Smith represented in writing that he had no intent to file for bankruptcy protection. As with Arnett, this representation was made pursuant to paragraph 22(j) of the agreement, which states, "Pledgor represents, warrants, acknowledges and agrees . . . You are not a debtor in bankruptcy. You do not intend to file a federal bankruptcy petition." (Doc. 2-20 at 6.)

Like with Arnett, Smith had already decided to file for bankruptcy and had, in fact, begun printing documents in preparation for the filing. He filed for Chapter 13 bankruptcy protection two days after executing the new pawn agreement.

As it did with Arnett, TitleMax claims that had it known that Smith intended to file for bankruptcy protection, it would not have entered into the renewal pawn agreement with Smith.

Smith proposed a plan that included the TitleMax pawn with a debt amount of $1,850, a payment period of 48 months, interest at 5.25%, adequate protection payments of $25 per month, and a monthly payment of $50. TitleMax objected to the plan, alleging bad faith and fraud. The bankruptcy court overruled the objection and confirmed the plan.

## DISCUSSION

TitleMax advances the same grounds of error by the bankruptcy court for both appeals. TitleMax argues the bankruptcy court erred in (1) concluding that paragraph 22(j) of the TitleMax pawn agreements was void against public policy, and in (2) the

court's application of the *Kitchens*[1] factors in determining whether the debtors submitted their plans in good faith. Because of these errors, according to TitleMax, the bankruptcy court not only confirmed the proposed plans when it should not have but also sanctioned intentional fraud by the debtors.

TitleMax's appeals focus on the good faith criteria within 11 U.S.C. § 1325. Under § 1325(a)(3), a bankruptcy court must confirm a Chapter 13 plan if, under the totality of the circumstances, "the plan has been proposed [by the debtor] in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). In *In re Kitchens*, the Eleventh Circuit articulated eleven non-exclusive considerations in evaluating a debtor's good faith:

    (1) the amount of the debtor's income from all sources;

    (2) the living expenses of the debtor and his dependents;

    (3) the amount of attorney's fees;

    (4) the probable or expected duration of the debtor's Chapter 13 plan;

    (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

    (6) the debtor's degree of effort;

    (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

    (8) special circumstances such as inordinate medical expense;

---

[1] *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983) (per curiam).

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; and

(11) the burden which the plan's administration would place on the trustee.

702 F.2d at 888-89.

While the bankruptcy court considered all these factors, the tenth factor drew the court's primary focus. That factor, under *Kitchens*, required the bankruptcy court to consider the circumstances under which the debtors contracted their debts and demonstrated their "bona fides" in dealing with their creditors. *Id.* at 889. TitleMax contends that the bankruptcy court erred in its analysis of this factor when it (1) disregarded paragraph 22(j) of the pawn agreement after finding it to be against public policy, and (2) focused on the actions of the creditor in determining the debtors' bona fides.

For the reasons that follow, the Court agrees with TitleMax and concludes that the bankruptcy court's orders confirming the plans are due to be vacated and these matters remanded for further proceedings consistent with this decision.

### A. Paragraph 22(j) of the TitleMax Pawn Agreement Is Not Void

The bankruptcy court first declared as a matter of law that paragraph 22(j) of

the TitleMax pawn agreements was unenforceable as against public policy and therefore the representations and agreements of the debtors in this paragraph could not be considered in determining whether the debtors proposed their plans in good faith. In paragraph 22(j), the debtors acknowledged two present-tense statements of fact at the time they contracted with TitleMax:

> Pledgor represents, warrants, acknowledges and agrees . . . You are not a debtor in bankruptcy. You do not intend to file a federal bankruptcy petition.

(Doc. 4-17 at 6 in *Arnett*; doc. 2-20 at 6 in *Smith*.)

While these were statements of affirmative fact, which TitleMax asserts were pertinent to its underwriting decisions and would give TitleMax a right to seek possession of the vehicles if proven false, the bankruptcy court construed this provision as a prepetition waiver of the debtors' bankruptcy rights. The court stated that "it appears that TitleMax put Paragraph 22(j) in its contract to defeat the application of the bankruptcy laws and force a forfeiture of the debtor's automobile" so that a debtor "could not file bankruptcy to save his car." (Doc. 1-3 at 13.) The bankruptcy court went on to note that "[i]t is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code . . . The prohibition of prepetition waiver has to be the law; otherwise, astute creditors would routinely require their debtors to waive." (*Id.* at 4 (quoting *The Bank of China v. Huang* (*In re Huang*), 275 F.3d 1173, 1177 (9th Cir. 2002)).) In other words, according to the

bankruptcy court, a "debtor may not contract away his right to relief under the bankruptcy code." (*Id.* at 5.) Therefore, because the bankruptcy court found that paragraph 22(j) was an impermissible prepetition waiver of bankruptcy rights, it concluded that the provision was void as against public policy and could not be enforced or taken into consideration as it related to the debtors' good or bad faith.

But in its analysis, the bankruptcy court misconstrued the operative language. Pertinent to this appeal, the language was *not* a prepetition waiver of any rights in bankruptcy, either in substance or in application. Nowhere does it expressly preclude the debtors from filing for bankruptcy, asserting the automatic stay, or obtaining a bankruptcy discharge. Instead, by its terms, all the language in paragraph 22(j) did was require the debtors to signify two distinctive affirmative prepetition facts when they executed the pawn agreements with TitleMax: that they were not presently in bankruptcy and that they had no present intent to file for bankruptcy protection.[2]

And in misconstruing the language, the bankruptcy court also ignored the legitimate reasons that a creditor such as TitleMax would want to know these two facts in making the decision to enter into a contract with the debtor.

Of course, a present intent does not equate to a longer-term or permanent intent because circumstances can later change that necessitate consideration of

---

[2] The debtors rely upon a single decision, *see In re Powell*, 2011 WL 5101753 (Bankr. C.D. Ill. Oct. 27, 2011), by a bankruptcy court in Illinois in support of their interpretation of the language. This Court does not find that decision persuasive.

bankruptcy protection. Paragraph 22(j) does not prohibit a debtor from later forming the intent to file for bankruptcy after signing the pawn agreement; it only requires the debtor have no such intent at the time of execution. But here, there was no intervening change because the debtors testified that they had the intent to file for bankruptcy protection when they entered into their pawn agreements.

And further, as the record shows, the language was not used by TitleMax to thwart application of the bankruptcy discharge or to thwart efforts to implement or impose a stay. Instead, to the extent TitleMax has invoked paragraph 22(j), it has been in the context of evidencing the debtors' prepetition intent at the time they contracted with TitleMax, an intent that they do not otherwise dispute.

The Court concludes, under its *de novo* review, that paragraph 22(j) in the TitleMax pawn agreements was not unenforceable as against public policy because it did not amount to a prepetition waiver of any bankruptcy rights. *See Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1290 (11th Cir. 1998) (applying *de novo* review to its interpretation of a contract). Accordingly, on this issue, the bankruptcy court erred, and paragraph 22(j) should have been considered in making the § 1325(a)(3) good faith determination

**B. The Bankruptcy Court Misapplied the Tenth *Kitchens* Factor**

In addition to the paragraph 22(j) issue, TitleMax also contends the bankruptcy court erred in focusing on TitleMax's perceived conduct and not on the

debtors' conduct when considering the tenth *Kitchens* factor. That factor, under *Kitchens*, required the bankruptcy court to consider the circumstances under which the debtors contracted their debts and demonstrated their "bona fides" in dealing with their creditors. 702 F.2d at 889. But, TitleMax argues, the bankruptcy court strayed from its task in considering this factor. This Court agrees.

"A bankruptcy court's determination whether a chapter 13 plan has been proposed in good faith is a finding of fact reviewable under the clearly erroneous standard." *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014) (citation omitted). However, this standard "does not apply to findings made under an erroneous view of controlling legal principles." *Rowe v. Gen. Motors Corp.*, 457 F.2d 348, 356 n.15 (5th Cir. 1972).[3] Instead of looking at the debtors' conduct (that is, their bona fides in their dealings with TitleMax), the bankruptcy court looked at the bona fides of TitleMax's conduct. In its decision, the bankruptcy court embarked on a critique of, among other things, the title pawn industry in general, TitleMax's assessment of interest rates which the bankruptcy court called excessive and predatory, and language in the pawn agreements that the court ultimately found to be void as against public policy. From the sum of these considerations, the bankruptcy court then found that the debtors acted in good faith despite both debtors' acknowledged plans to file

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

11

for bankruptcy protection at the time they entered into their pawn agreements with TitleMax.

In challenging the bankruptcy court's decision, TitleMax specifically points to the court's (1) statements that "TitleMax is a maker of predatory loans at astronomical interest rates," (2) reliance on its own knowledge of the experiences of other borrowers, and (3) analysis of "TitleMax's bona fides" which it claimed were "suspect"; all of which culminated in the bankruptcy court's finding that the debtors had filed their plans in good faith. (Doc. 1-3 at 13.) But none of these considerations are appropriate for determining the *debtors'* bona fides. In any event, title pawns are permissible in Alabama, and the rates charged by TitleMax are not usury under the Title Pawn Act. *See* Ala. Code § 8-8-5. And as explained above, paragraph 22(j) is not void as against public policy, and so the bankruptcy court erred in failing to consider it in evaluating the debtors' good faith. As for the bankruptcy court's knowledge of other borrowers' experiences, no evidence was presented by the debtors as to those experiences, and therefore that should not have been considered even if it was appropriate under the tenth *Kitchens* factor. Thus, the bankruptcy court's analysis was based upon an erroneous view of controlling legal principles concerning the tenth *Kitchens* factor.

The bankruptcy court's analysis suffers from an additional flaw. Even in the absence of paragraph 22(j), the debtors still had the admitted intent, as evidenced by

their respective testimony at the evidentiary hearings, to file for bankruptcy almost immediately after executing the pawn agreements. That is, they had the intent not to honor the terms of the agreements with TitleMax at the time they made those agreements. And as they admit, the debtors induced TitleMax to enter into new pawn agreements with the intention of having those agreements modified within a bankruptcy plan, which would allow them to repay their pawns over the duration of their plans at a reduced interest rate rather than the 30-day window contemplated by the pawn instruments.

This intent was clearly relevant to whether the debtors could meet their good faith showing under the tenth *Kitchens* factor. After all, courts have repeatedly acknowledged the importance of the fact that a debtor entered into a debt so close to a bankruptcy filing. As another court in this District has recognized:

> The debtor's good faith is often put at issue when she incurs a debt on the eve of bankruptcy. Recently incurred debts bring into question the debtor's *bona fides,* or lack thereof, in dealing with the creditor. Further, these last-minute debts call into question whether the debtor really intended to perform under the contract at the time it was made, thus raising the issues of promissory fraud and the dischargeability of the debt in a hypothetical chapter 7 case.

*In re Crittenden*, 2009 WL 2424331, at *3 (Bankr. M.D. Ala. Aug. 6, 2009); *see also In re Mercer*, 246 F.3d 391, 407-08 (5th Cir. 2001) (en banc) (discussing debtor's implied intent not to perform at the time of contracting as relevant to the issue of nondischargeability of debt in Chapter 7 matter, and stating, "A representation of the

maker's own intention to do . . . a particular thing is fraudulent if he does *not* have that intention." (citation omitted)). And here, not only was that temporal element in play, but the debtors actually confirmed their dishonest intent in their testimony.

By looking exclusively at TitleMax's conduct, the bankruptcy court lost sight of its charge: to evaluate the debtors' bona fides. Because the bankruptcy court placed such emphasis only on TitleMax, the court legally erred in its consideration and application of the tenth *Kitchens* factor.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's orders confirming the plans of Appellees Smith and Arnett are VACATED, and these matters are REMANDED for further proceedings consistent with this decision. The bankruptcy court is ORDERED to reconsider the *Kitchens* factors in accordance with this ruling. This Court expresses no view as to what impact, if any, such reconsideration might have on the ultimate issue of whether the debtors proposed their plans in good faith.

DONE and ORDERED on this the 22nd day of August, 2022.

                                                 /s/ R. Austin Huffaker, Jr.
                                         R. AUSTIN HUFFAKER, JR.
                                         UNITED STATES DISTRICT JUDGE